VESTEL *v.* EDWARDS *et al.,* tax-assessors.

1. An act of the legislature, which has for its object the equalization of taxation by means of a just and fair assessment of property returned for taxation, and which provides for notice to any taxpayer whose returns have been increased, and that if he is dissatisfied with the action of the county board of tax-assessors in assessing the value of his property for taxation he may demand an arbitration of the question of the valuation of the property returned for taxation, and which provides that in case of disagreement as to the selection of an umpire the ordinary or the county commissioners, as the case may be, shall appoint one, and the arbitrators shall render their decision within ten days from the date of the naming of the arbitrator by the board, is not repugnant to the due-process clause of the constitution of the United States as contained in the fourteenth amendment.

(*a*) Nor is it obnoxious to the due-process clause of the constitution of the State of Georgia.

(*b*) Nor does it deprive the taxpayer of the equal protection of the laws.

2. Under the allegations of the petition as to fraud and misconduct, the arbitrator appointed by the tax-assessors, who was a brother of one of the assessors, was disqualified from acting as such arbitrator, because of his relationship to the assessor and such alleged misconduct.

APRIL 17, 1915.

Petition for injunction. Before Judge Patterson. Fannin superior court. September 8, 1914.

J. P. Vestel filed an equitable petition against L. G. Edwards and others, as constituting the local board of tax-assessors of Fannin county under the act of the legislature approved August 14, 1913 (Acts 1913, p. 123), and John E. Cook as tax-receiver of the county, alleging as follows: They had assessed certain wild lands in Fannin county, belonging to the petitioner, at a valuation in excess of their value, and in excess of the valuation assessed on like property in other counties of the State. Petitioner made his return in due form to the tax-receiver of the county for the year 1914, within the time allowed by law, at a valuation of $11,746, which was on a basis of equality with other returns of like property in the county of Fannin, as well as similar lands situated in

adjoining and other counties in the State containing that class of lands. On a subsequent date the tax-assessors of the county notified petitioner that they had assessed the lands at $46,984. Being dissatisfied with the assessment and believing it unfair, unreasonable, and unjust, petitioner gave the tax-assessors written notice that he demanded an arbitration as to the value of the lands, and named an arbitrator, a freeholder of the county, who was competent and qualified to act in such capacity and make a just and true return. The tax-assessors selected M. Ross as arbitrator, who is also named as a defendant in this case. Petitioner challenged the eligibility of Ross to act as arbitrator, on the ground that he was a brother to the chairman of the board of tax-assessors, and therefore was disqualified to represent them in arbitrating the matter in controversy. The tax-assessors overruled the objection or protest, and refused to remove the arbitrator appointed by them, or to substitute any freeholder of the county in his stead. It was no part of the purpose or intention of the tax-assessors to give petitioner a fair arbitration upon the value of the lands returned by him for taxation; it was "their purpose at the outset to delay and dilly dally the matter until the time for arbitration would expire by law," etc. It was part of the purpose of the board of tax-assessors, acting in conjunction and collusion with their arbitrator, Ross, to name two of the arbitrators and thereby make the arbitration sought by the petitioner fruitless in so far as affording him any redress against the unreasonable assessment made upon his property by the tax-assessors. Consequently the arbitrator appointed by the tax-assessors, M. Ross, suggested the names of ten men as arbitrators, all of whom were biased against petitioner, and who had expressed themselves to the effect that the assessment made by the tax-assessors should not be disturbed or changed. M. Ross would suggest nobody, or agree to anything, without first conferring with the tax-assessors and getting their wishes. Ross has declared frequently that there should not be any arbitration on petitioner's application, unless some arbitrator named by him was agreed upon. Petitioner has sought a fair and just arbitration as contemplated by the act of 1913; and as showing his willingness and desire for such arbitration, his arbitrator, T. A. Terrell, offered and announced his willingness to accept any one of sixty-seven named citizens and freeholders of the county, who are not in any wise related to any of

the parties at issue, or otherwise disqualified from acting in the capacity of arbitrator, but M. Ross, declined to accept or consider any one of them. Owing to the dilatory tactics of the tax-assessors and their arbitrator in furtherance of their collusive scheme to defeat petitioner of such arbitration, the time for arbitration under the statute has expired without his being able to get an arbitration on the assessment and valuation made of his property by the tax-assessors, and no arbitration can now be had under the terms of the statute providing for such arbitration, and petitioner is utterly without remedy or right of relief under the statute; "and now that the said arbitrators have succeeded in defeating your petitioner of the right of arbitration, they intend and say that they will have entered on the tax digest of the county said lands returned by petitioner for taxes, at the valuation placed thereon by said tax-assessors, thereby unjustly and wrongfully fixing the value of said properties for taxation at the sum so named by them." Petitioner's failure to get an arbitration under the act is chargeable entirely to the action and fault of the tax-assessors and their arbitrator, and petitioner is in no wise at fault or chargeable with the failure to arbitrate, and the action on the part of the tax-assessors and arbitrator deprived petitioner of the legal remedy provided by statute. He prays, that each and all of the defendants be restrained and enjoined from changing or altering the tax return made by him, and from entering any valuation for the properties on the tax digest of the county, other than that put upon it by petitioner in his sworn return, and that on the hearing of the case an injunction be granted against the defendants and each and all of them, their agents and employees; and for such other and further relief as may be necessary for the full preservation and protection of his legal rights.

The defendants filed a general demurrer, and averred, among other things, that the assessment complained of was made on the 5th day of June, 1914, and that the petition for injunction was filed on June 25, 1914, twenty days after the assessment complained of, at which time neither the defendants nor the superior court of the Blue Ridge circuit would have any jurisdiction to reduce the assessment, and to entertain and exercise jurisdiction would delay the collection of the State's revenue, and would be in contravention of the statute forbidding judicial interference with

the collection of taxes.  Upon considering the petition and demurrer, the trial judge denied the injunction, and to this ruling the plaintiff excepted.

*T. A. Brown, D. W. Blair,* and *C. H. Griffin,* for plaintiff.

*Warren Grice, attorney-general,* for defendants.

HILL, J.  (After stating the foregoing facts.)

1.  The plaintiff seeks to enjoin the defendants, as tax-assessors under the act of the legislature known as the tax-equalization act (Acts 1913, p. 123), from altering or changing the tax returns made by him of certain real estate, and from entering on the tax digest any valuation of such realty other than that placed thereon by petitioner.  He attacks the act in question as being violative of the due-process clauses of the State and Federal constitutions, contained in sections 6359 and 6700 of the Civil Code of 1910.  Sections 11, 13, and 14 of the act are especially attacked as being repugnant to the clauses of the constitutions referred to.  It is insisted:  (1) That these sections of the act provide for the taking of the property of the plaintiff and other taxpayers of the State similarly situated, and deny to them adequate remedy of law, and due process of law, for the reason that it is within the power of the tax-assessors to defeat and prevent arbitration under the act, and that no remedy by appeal, or otherwise, is provided.  (2) That the act requires the arbitration to be made within ten days from the time of the selection of the arbitrator of the tax-assessors, without making any allowance for inability to agree upon a third assessor or arbitrator, or adequate time for the examination of properties and the ascertainment of their values, or for any other cause that might interfere to render such arbitration impossible within the time specified in the act.  (3) That there are no standards or methods prescribed, or rules fixed for the holding and determination of the arbitration, but the arbitration is left entirely to the whims or caprices of a majority of the arbitrators.  (4) That the tax returns of an entire county may be arbitrated by the State tax commissioner and the chairman of the county board of tax-assessors, and the entire tax returns of such county increased without any taxpayer of the county being made a party to the arbitration, or given a right to be heard with reference to the amount that his taxes shall be assessed by such arbitration.

The three sections of the act specified are too lengthy to be set

out in full in this opinion, but suffice it to say they relate to the duty of the State tax commissioner, who, so far as the record shows, has not exercised any of the duties imposed upon him by those sections of the act, so far as relates to the present case; and therefore, whatever we might discuss or decide relatively to that officer, or his duties under the act, would be moot. Until that official has exercised the authority conferred upon him by the act to the detriment of the plaintiff, the latter can not attack the act with respect to the authority thus conferred. We therefore confine our discussion and decision to the attack made on the act with reference to the county tax-assessors who have acted, and their duties, and especially to section 6 of the act. This last section provides that the board of county tax-assessors shall meet each year within ten days from the date of the closing of the tax returns for the current year, to receive and inspect the tax returns as laid before them by the tax-receiver. The board is to examine all the returns of both real and personal property of each taxpayer, and make such "corrections, changes, and equalizations" as authorized by the act. "If any taxpayer is dissatisfied with the action of said board, he may, within ten days from the giving of said notice in case of residents, and within twenty days in case of non-residents of the county, give notice to said board that he demands an arbitration, giving at the same time the name of his arbitrator; the board shall name its arbitrator within three days thereafter, and these two shall select a third, a majority of whom shall fix the assessments and the property on which said taxpayer shall pay taxes, and said decision shall be final, except so far as the same may be affected by the findings and orders of the State tax commissioner, as hereinafter provided. The said arbitrators shall be freeholders of the county, and shall render their decision within ten days from the date of the naming of the arbitrator by said board; else the decision of said board shall stand affirmed and shall be binding in the premises," etc.

It has been held that in the matter of taxation due process of law does not require a judicial procedure. And this ruling of the courts was both before and since the adoption of the fourteenth amendment to the constitution of the United States. Judson on Taxation, § 318. And this ruling is based on the ground that revenues must be collected without delay, and can not await the decision of a common-law trial. Of necessity the sovereign must pro-

ceed in a somewhat summary way to collect taxes. Ibid. And while notice can not be dispensed with in cases where the tax is dependent on valuation of the property, and is not specific, the legislature may prescribe the kind of notice and the manner in which it shall be given. Judson on Taxation, § 321. See Turpin v. Lemon, 187 U. S. 51 (23 Sup. Ct. 20, 47 L. ed. 70). In Pittsburg &c. Ry. Co. v. Backus, 154 U. S. 421 (14 Sup. Ct. 1114, 38 L. ed. 1031), it was held: "A tax law which grants to the taxpayer a right to be heard on the assessment of his property before final judgment provides a due process of law for determining the valuation, although it makes no provision for a rehearing." In McGehee on Due Process of Law, 239, it is said: "Since proceedings for the assessment and collection of taxes were in constant use long before the adoption of the constitution, and have been necessarily employed by the Federal government and the various States ever since their formation, the rule that whatever proceedings are in accord with settled usage in England and in this country constitute due process is peculiarly applicable to test the sufficiency of notice and hearing required in such cases. In conformity with this principle, it has been held that the process of taxation 'involves no violation of due process of law when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them.'" In Gray on Limitations on the Taxing Power, 577, § 1161, it is said: "Where, before the assessment becomes final, opportunity is given to appear and make proofs before a board of commissioners, or a board of equalization, having authority to hear complaints and proofs and make correction of the assessment, the opportunity is sufficient." From these authorities, we think it can not be said that the 6th section of the act in question deprives the plaintiff of due process of law, required by the State and Federal constitutions; nor do they deprive any taxpayer of the equal protection of the laws.

Moreover, the 6th section of the act of 1913 provides that arbitration shall be had "in the same manner as is now provided for the arbitration of individual tax returns, except in so far as the existing law may be modified by the provisions of this section." The existing law on this question is contained in the Civil Code, § 1097 et seq., and in the Acts of 1910, p. 24. The code sections cited do not provide for the selection of a third assessor, or umpire,

except as he may be selected by the two assessors appointed by the tax-receiver and the taxpayer. But the act of 1910 (Acts 1910, p. 24) provides that the tax-receiver may make the assessment if the return of the taxpayer is not satisfactory to him, and the taxpayer, on notice to him within twenty days after receiving such notice, may refer the question of true value to arbitrators, "one to be chosen by himself and one to be chosen by the tax-receiver, with power to choose an umpire in case of disagreement, and their award shall be final. . . Should the two arbitrators provided for in this section fail to agree upon the value of the property, and fail to name an umpire within twenty days after their appointment, the umpire shall be named by the ordinary or county board of commissioners, as the case may be." Construing this act in conjunction with the code section cited above, it can not be held that the law does not provide for a case where the arbitrators fail to agree, and one or both arbitrarily or capriciously refuse to agree on an umpire. The act of 1910 as "modified by the provisions of" the act of 1913 (Acts 1913, p. 128) provides that in case of disagreement of the arbitrators the ordinary shall appoint the umpire. The disagreement, if any, will at once manifest itself, when application can be made to the ordinary for the appointment of an umpire, who can immediately proceed with his duties. There need be no unnecessary delay in the appointment of an umpire, or in the arbitration proceedings. So that, if the parties avail themselves of it, there is a remedy provided by law whereby the ordinary or county commissioners, as the case may be, can appoint an umpire in case of disagreement of the assessors, and the hearing can proceed without delay. The plaintiff having failed to apply to the ordinary or county commissioners, as the case may be, for the appointment of an umpire, in order to arbitrate as provided by law, the court did not err in refusing to grant the injunction on this ground.

2. It was alleged in the petition that the arbitrator appointed by the board of tax-assessors (M. Ross) was disqualified from acting in the capacity of arbitrator, for the reason that he was a brother of the chairman of the board of tax-assessors. It was further alleged, that the arbitrator named by the tax-assessors was not only disqualified, by relationship, from acting as an arbitrator, but that he was entirely and completely under the domination, and subject to the wishes and direction, of the board of tax-assessors, whose

purpose it was to have their arbitrator name as umpire a man he knew would not act, or one who had already expressed himself as being averse to the rights of plaintiff, and that he had named only persons biased against plaintiff, and those who had expressed themselves to the effect that the assessment made by the tax-assessors should not be disturbed or changed; that this arbitrator would not suggest any one or agree to anything, without first conferring with the tax-assessors and getting their wishes, etc. Arbitrators are selected by parties to settle their controversies, either by voluntary submission or where provision has been made by law for the appointment of arbitrators. The act of 1913 contemplates that the arbitration provided for shall be conducted in a manner which shall be fair and just to each party. The policy of the law is to permit no one to decide his own case, or to decide the case of those within the prohibited degrees of kinship. Any other rule would result in an arbitration becoming a mere farce. Assuming that the tax-assessors are merely nominal parties, and have no personal interest in the result of the award, how would the case stand if it were reversed? Suppose the taxpayer who is contesting the assessment of his property should appoint his brother as an arbitrator. Would it be contended that such appointment would be either fair or legal? Surely not. It is true there is direct pecuniary interest in the one case and none in the other. But if it is unfair and illegal to appoint a near relation on one side, why not on the other side? No answer has been filed in this case, so far as the record shows, and the case is here on petition and demurrer, which admits the truth of the allegations of the petition. We think that the appointment as an arbitrator of one who was the brother of the chairman of the board of tax-assessors was unauthorized by law; and where it was alleged that such arbitrator in the assessment of the property of the taxpayer acted in such manner as to indicate fraud and misconduct, and that the tax-assessors assessed the property at an unreasonable, unjust, and unfair valuation, and by their collusive, arbitrary, fraudulent, and wrongful acts prevented the taxpayer from having an arbitration as provided by law, and that he was remediless unless a court of equity intervened, and injunction was prayed to restrain and enjoin the assessors and their arbitrator and the tax-receiver from changing and altering the valuation made by the taxpayer in his return, as well as other relief, it was

error, on a consideration of the petition and demurrer, to refuse an interlocutory injunction.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*