*G. H. Richter* and *E. S. Elliott,* for plaintiff.

*H. W. Johnson,* contra.

---

## BARNES *v.* WATSON, tax-collector, *et al.*

1. Upon consideration of the evidence and the pleadings it does not appear that the petitioner in this case was denied the right of arbitration upon the question of the valuation of his property, which had been assessed by the county board of tax-assessors at a higher valuation than that placed upon it in the return made by petitioner to the tax-receiver.

2. The sixth section of the act of August 14, 1913, relating to the duties of county boards of tax-assessors created by that act, and providing for notice to any taxpayer whose returns have been increased, and for arbitration in case of dissatisfaction of a taxpayer with the action of the board, and for a decision by a majority of the arbitrators fixing the final assessment of the property, except so far as the same may be affected by the finding of the State tax commissioner, is not repugnant to the due-process clause of the constitution of the United States, as contained in the fourteenth amendment; nor is it obnoxious to the due-process clause of the constitution of the State of Georgia; nor does it deprive the taxpayer of the equal protection of the laws.

(*a*) Questions raised as to the constitutionality of those portions of the act which relate to and define the powers and duties of the State tax commissioner are not determined, as they are not involved under the facts of this case.

(*b*) Upon review of the decision of *Vestel* v. *Edwards,* 143 *Ga.* 368 (85 S. E. 187), the request that it be overruled is denied.

3. The tax-equalization law is not unconstitutional on the ground that it is in conflict with art. 7, sec. 2, par. 1, of the constitution of Georgia (Civil Code, § 6553), which declares that all taxation shall be uniform upon the same class of subjects, etc.

4. That part of the act which provides for the appointment of county boards of tax-assessors is not·unconstitutional on the ground that it is in conflict with art. 11, sec. 2, par. 1, of the constitution of Georgia (Civil Code, § 6599), which declares that county officers shall be elected by the qualified voters of their respective counties. The members of the board are not "county officers," within the meaning of that expression as used in the section of the constitution last referred to.

5. The appointment of the board of tax-assessors of McDuffie County by the ordinary was legal and proper under the law.

No. 774. FEBRUARY 24, 1919.

Petition for injunction. Before Judge Hammond. McDuffie superior court. December 21, 1917.

*J. Glenn Stovall* and *J. B. Burnside,* for plaintiff.

*Clifford Walker,* attorney-general, *John C. Hart, John T. West,* and *Henry J. Fullbright,* for defendants.

BECK, P. J. John M. Barnes brought his petition against W. A. Watson, tax-collector, and H. T. Clary, sheriff, seeking to enjoin the collection of a tax fi. fa. issued against him for State and county taxes for the year 1915. In the petition it is alleged as follows: On May 4, 1915, petitioner returned his property for taxation for that year at a stated valuation. This return was regularly made pursuant to law, and was delivered to the tax-receiver of the county, who delivered it approved to the board of tax-assessors of the county; and the board increased the valuation given in his return, and assessed his property for taxation at the increased valuation. Within ten days from the date on which he was served with notice of the increase, being dissatisfied with the action of the board, he filed his protest and demanded an arbitration, as provided by the act approved August 14, 1913, entitled "An act to regulate the return and assessment of property for taxation in this State," etc. Subsequently the board notified him of the selection by them of an arbitrator; and a time of meeting was appointed for the arbitration within ten days from the naming of the arbitrator chosen by the board. At the time named the petitioner and his arbitrator were present to proceed with the arbitration, but the arbitrator named by the board would not act, giving some frivolous excuse for continuing the matter, and failed and refused to act at any time within the ten days, though petitioner's arbitrator stood ready to proceed with the arbitration at any and all times. After the expiration of ten days from the date of his selection the arbitrator chosen by the board informed the arbitrator selected by the petitioner that the time allowed by law for arbitration had expired, and he declined to arbitrate the matter, for that reason; and so no arbitration was had, and petitioner was denied the right thereof through no fault of himself or of the arbitrator selected by him. It is charged, that the assessment made by the board of tax-assessors was null and void on account of denial to petitioner of the right of arbitration; that the assessment was illegal and void, for the reason that there is a board of com-

missioners of roads and revenues in McDuffie County, who were the legal advisers of the ordinary, and the ordinary appointed the members of the board of tax-assessors without the advice of the board of county commissioners; that the act of August 14, 1913, is void for reasons stated, because it conflicts with specified portions of the State and Federal constitutions (see headnotes). The petitioner tendered the tax due according to the valuation of the property made in his return; but the tax-collector refused to receive this, and issued a fi. fa. based upon the increased valuation.

At the hearing, after evidence was submitted, the court refused an interlocutory injunction, and the petitioner excepted.

1. The court below did not err in adjudging adversely to petitioner upon the issue presented by his allegations that he had been denied the right of arbitration so as to contest the increased valuation made by the board of tax-assessors. The board appointed an arbitrator, and the taxpayer appointed one. These two arbitrators could not agree on the valuation, and the court was authorized to find from the evidence that the arbitrator named by the petitioner capriciously refused to agree on an umpire, and it does not appear that any effort was made by petitioner to avail himself of the remedy provided by law, whereby the ordinary or the county commissioners, as the case may be, can appoint an umpire in case of disagreement of the arbitrators, thereby securing a hearing without delay. This question was ruled on in the case of *Vestel* v. *Edwards,* 143 *Ga.* 368 (85 S. E. 187).

2. In *Vestel* v. *Edwards,* supra, it was held: "An act of the legislature which has for its object the equalization of taxation by means of a just and fair assessment of property returned for taxation, and which provides for notice to any taxpayer whose returns have been increased, and that if he is dissatisfied with the action of the county board of tax-assessors in assessing the value of his property for taxation he may demand an arbitration of the question of the valuation of the property returned for taxation, and which provides that in case of disagreement as to the selection of an umpire the ordinary or the county commissioners, as the case may be, shall appoint one, and the arbitrators shall render their decision within ten days from the date of the naming of the arbitrator by the board, is not repugnant to the due-process clause of the constitution of the United States as contained in the four-

teenth amendment. (*a*) Nor is it obnoxious to the due-process clause of the constitution of the State of Georgia. (*b*) Nor does it deprive the taxpayer of the equal protection of the laws." The decision in the *Vestel* case is controlling upon the contention made by the petitioner that the tax-equalization act is unconstitutional in that it provides for arbitration in case the taxpayer is dissatisfied with the assessment of the value of his property by the board of tax-assessors, and prohibits any right of appeal from the finding of the arbitrators, and provides that if no arbitration is had under the provisions of the act the valuation fixed by the board shall be binding and final. Substantially the same contentions were made in the case cited, and the decision thereof settles this part of the controversy adversely to the plaintiff.

The contention that the tax-equalization act is unconstitutional and void because of its provisions as to the duties and powers of the State tax commissioner, in that there is no provision for notice to a taxpayer in the event of an increase of the valuation of property by order of the commissioner, or by arbitration between the commissioner and the county board of tax-assessors, will not be determined in this case, for the reason stated in the *Vestel* case, where substantially the same contention was made; it being ruled there that questions based upon constitutional grounds which relate to the duty of the State tax commissioner, "who, so far as the record shows, has not exercised any of the duties imposed upon him by those sections of the act," and, therefore, whatever might be decided "relatively to that officer, or his duties under the act, would be moot." And it was added that until that officer has exercised the authority conferred upon him by the act to the detriment of the plaintiff, the latter could not attack the act with respect to the authority conferred upon him.

Upon review of the decision in *Vestel* v. *Edwards,* supra, the request that it be overruled is denied. See *Turner* v. *Wade,* 147 *Ga.* 666 (95 S. E. 220).

3. The plaintiff raises the further contention that the tax-equalization act is unconstitutional because in conflict with art. 7, sec. 2, par. 1, of the constitution of Georgia, which provides that all taxation shall be uniform. There is no merit in this contention. See *Columbus So. Ry. Co.* v. *Wright,* 89 *Ga.* 574 (15 S. E. 293).

4. The board of tax-assessors, which is to be established in

every county, is a part of the machinery created by the legislative power of the State to equalize the burdens of taxation, and for collecting the revenues due the State and the county; and while it is provided that the members of the board shall be residents of the county in which they are appointed, they are not county officers in the sense in which that word is used in the code section providing that county officers shall be elected by the qualified voters of their respective counties.

5. It is further contended in this case that the assessment made by the county board is void, because the members of the board were appointed by the ordinary and not by the commissioners of roads and revenues. The portion of the tax-equalization law relating to the appointment of the county board of tax-assessors provides that they shall be appointed by the board of county commissioners; and that if there is no board of commissioners in a given county, the tax-assessors shall be appointed by the ordinary of that county. By an act of the General Assembly, entitled "An act to create a board of commissioners of roads and revenues for the County of McDuffie, and for other purposes," approved August 24, 1872, it is provided that the commissioners elected under the provisions thereof "shall be the legal advisers of the ordinary in all matters relating to the revenue and taxes for county purposes, public bridges, public roads, and county matters generally; and a majority shall determine all questions." This is the only part of the act of 1872 defining the duties of the commissioners of McDuffie County. It is provided in the constitution of the State that the legislature may define the duties of the board of commissioners for any county, and in the County of McDuffie it would seem that the commissioners have no other duty than to act in an advisory capacity. On the trial of the case the ordinary testified, that he "was ordinary of McDuffie County, Georgia, at the time of the appointment of the board of tax-assessors of said county, and as such ordinary he was in absolute and sole charge of the management of county affairs; that he assessed the taxes, directed the working of public roads, the building and repairing of public bridges, and had charge of the property of the county generally; that he attended to all duties pertaining to the office of ordinary; that his predecessors in office had had similar charge of county affairs, and that the board of roads and revenues as created by

the act of Aug. 24th, 1872, has never managed any of the county affairs or had direction in county matters, except when the ordinary desired to consult them in merely an advisory capacity; that the various ordinaries of said county have always managed county affairs without any direction from said board of roads and revenues, the affairs having been always absolutely controlled as deemed best by the ordinary alone, who was in no wise bound by the views of said board of roads and revenues."

We are of the opinion that it is giving a proper construction to the provisions of the act of 1872, relating to the commissioners of McDuffie County, to hold that the ordinary had the power to appoint the county board of tax-assessors; and whether or not it was proper for him to obtain the advice of the county commissioners, the fact that he acted without that advice would not render his appointment vain and nugatory. It seems clear that where the county has no other commissioners than those who can act only in an advisory capacity to the ordinary, these are not such commissioners as fall within the meaning of that part of the act of August 14, 1913, relating to the appointment of the county board of tax-assessors. When the legislature enacted the tax-equalization law and provided therein that the county board of tax-assessors should be appointed by the county board of commissioners in counties where there were commissioners, it must have had in view counties which had commissioners with some actual authority to transact the business of the county and to manage its affairs in the ordinary way in which it is done by boards of county commissioners, and did not have in view those counties with commissioners vested merely with the right to advise. The expression "and a majority shall determine all questions," which follows the definition of the powers conferred upon the commissioners of McDuffie County, evidently means that a majority of those commissioners shall determine all questions arising as to the advice which they shall give the ordinary, and leaves that officer as the actual agent of the county in managing its affairs within the sphere of duties pertaining to an ordinary where there are no commissioners.     *Judgment affirmed. All the Justices concur.*