### 22857. HENSON, Tax Assessor, et al. v. GEORGIA INDUSTRIAL REALTY COMPANY.

CANDLER, Justice. Georgia Industrial Realty Company filed a petition in the Superior Court of Fulton County on July 14,

1961, and as defendants to that proceeding it named the five members of the Joint City-County Board of Tax Assessors of the City of Atlanta and Fulton County; Jack L. Camp, as Tax Commissioner and Ex-officio Sheriff of Fulton County; and Charles L. Matthews, as Municipal Revenue Collector and Ex-officio Marshal of the City of the City of Atlanta. Its petition as amended alleges: On January 1, 1958, petitioner leased to Southern Railway Company for a period of 25 years certain described parcels of realty in the City of Atlanta and Fulton County which comprise a part of that railroad facility or property known as Inman Yard. The lease contract provides that the lessee is to use the leased premises exclusively for railroad purposes and for the years 1958, 1959 and 1960 the lessee returned the leased premises to Georgia's Revenue Commissioner for State, county and municipal ad valorem taxation and paid the taxes which the Commissioner assessed against it. On May 30, 1960, the Joint City-County Board of Tax Assessors for the City of Atlanta and Fulton County notified petitioner that it had assessed the leased realty for ad valorem taxation for the years 1958, 1959 and 1960 because it had failed to return such property for taxation; and on June 7, 1961, such board notified petitioner that it had also assessed the same property for 1961 ad valorem taxation. Pursuant to those assessments, fi. fas. were issued on June 26 and June 29, 1961, and for the 1958, 1959 and 1960 taxes. Such tax assessments and the fi. fas. issued thereon are illegal and unenforceable because the proposed amendment to Art. XI, Sec. I, Par. VI of the Constitution of 1945 (Ga. L. 1952, p. 591; *Code* § 2-7806) which authorizes the creation of a joint city-county board of tax assessors in certain counties of this State was not legally ratified and that an Act which the legislature passed in 1952 (Ga. L. 1952, p. 2825) as amended, pursuant to the terms of the proposed amendment is for stated reasons invalid and therefore unenforceable. It is further alleged that the defendants are seeking to double tax such property. There is a prayer that the court issue a declaratory judgment adjudging and holding that the defendant joint city-county board of tax assessors is not, and at no germane time was, a legally constituted tax assessing authority, either for the City of Atlanta or for Fulton County; that such board acted without legal authority in assessing petitioner's parcels of land for the years 1958, 1959 and 1960 for ad valorem tax-

ation by the City of Atlanta and/or Fulton County; that such board has no legal authority to assess petitioner's property for ad valorem taxation for the City of Atlanta and/or Fulton County for any year following 1960; that petitioner is not now and has not been since December 31, 1957, legally required to return the property it leased to Southern Railway Company to the joint city-county board of tax assessors for ad valorem taxation by the City of Atlanta and/or Fulton County; and that any attempt by the defendant Matthews and/or the defendant Camp to collect the ad valorem taxes and penalties which they contend are due and owing to the City of Atlanta and Fulton County for such tax years will be without legal authority. There is also a prayer that the court by appropriate order temporarily restrain and permanently enjoin the defendant members of the joint city-county board of tax assessors from assessing or attempting to assess petitioner's parcels of land for ad valorem taxation by the City of Atlanta and/or Fulton County while they are leased to Southern Railway Company for railroad purposes; and that the court by appropriate order temporarily restrain and permanently enjoin the defendant Matthews, as Municipal Revenue Collector and Ex-officio Marshal of the City of Atlanta and the defendant Camp, as Tax Commissioner and Ex-officio Sheriff of Fulton County, from collecting or attempting to collect by levy and sale of petitioner's property the taxes and penalties they claim are due by it to the City of Atlanta and Fulton County. The defendants demurred generally to the amended petition. Their demurrers were overruled and there is an exception to that judgment. *Held:*

1. The General Assembly at its regular 1952 session adopted a resolution proposing that Art. XI, Sec. I, Par. VI of the Constitution of 1945 (Ga. L. 1952, p. 591; *Code* § 2-7806) be amended by adding thereto the following: "The General Assembly of Georgia shall have the power by general, local or special law applicable to all counties having therein the greater part of a city with a population of 300,000 or more, according to the United States census of 1950 or any future United States census, and to said city including any portions which lie in one or more counties, without regard to the uniformity provisions otherwise contained in this article, section, and paragraph of this Constitution, to: (a) Provide for the establishment of a board of tax assessors, to define the juris-

diction, powers and duties thereof . . .; (b) Authorize said board to assess all taxable property in the county and in the city for taxation by either for all purposes which is now or may hereafter be authorized by law . . .; (c) Create a board of tax appeals and equalization, by whatever name designated, and to define the jurisdiction, powers and duties thereof . . .; and (d) Authorize or direct appropriations by the county or the city, or by both, or provide otherwise, for the support of the board or boards created by the General Assembly." The proposed amendment also provides that "The authority conferred on the General Assembly by this amendment shall be retroactive to January 1, 1952. Any Act passed after January 1, 1952, germane to the subject matter of this amendment, shall be conclusively presumed to have been passed under the authority of this amendment. It is declared that the authority conveyed to the General Assembly by this amendment relates to only one general subject matter, and the General Assembly is empowered, but not directed, to exercise such authority by one law pertaining to all or any one or more of said functions, which law may be passed prior to the submission of this amendment to the people."

The proposed amendment was submitted to the qualified voters of Georgia at the November general election of 1952. A majority of the votes cast were in favor of its ratification and the Governor by proclamation declared it to be a part of the Constitution of 1945. Before the proposed amendment was ratified, the General Assembly passed an Act conforming in all respects to the provisions thereof which the Governor approved on February 15, 1952 (Ga. L. 1952, p. 2825). Section 1 of that Act declares that these terms when used in the Act shall have the following definitions unless a different meaning clearly appears from the context: " 'City' shall mean the largest municipality located completely or in part in any county to which this Act shall be applicable. 'County' shall mean any county in this State having within its boundaries all or the greater part of the population of a city or municipality with a population of 300,000 or more, according to the United States census of 1950 or any future United States census." Section 2 of the Act created a joint city-county board of tax assessors for the entire territorial area of the city and county in all of those counties to which the Act is or may later become applicable. Section 5 provides: "Said joint

board of tax assessors shall have all the duties, powers and authority given to county tax assessors in Chapter 92-69, Code of Georgia, as amended, in carrying out the purposes of this Act." Section 10 of the Act provides: "If the joint board of tax assessors finds that any taxpayer has failed to return his property or has omitted from the return any property that should have been returned or has undervalued any property, said board shall have all the powers with respect to such returns provided by general law for the county board of tax assessors and shall proceed as therein provided to require correct returns." Section 11 of the Act creates a board of tax appeals and equalization and provides for the selection of its members and defines its jurisdiction. Other sections of the Act confer upon the joint city-county board of tax assessors all of the jurisdiction, powers, and duties which the proposed amendment to the Constitution authorized.

By an Act approved March 2, 1953 (Ga. L. 1953, Jan. Sess., p. 2792), the legislature amended the Act by striking the provision which created a board of tax appeals and equalization, substituting therefor the following provision: "Any taxpayer dissatisfied with the action of the joint city-county board of tax assessors shall have the right to demand arbitration as provided in Chapter 92-69 of the Georgia Code of 1933 as amended." The Act was again amended in 1958 (Ga. L. 1958, p. 3390) so as to give expressly to the board all of the power and authority conferred on county boards of tax assessors by §§ 92-6910 to 92-6916 of the Code of 1933, as amended.

2. We will first deal with the attacks which the plaintiff made on the validity of the 1952 amendment to Art. XI, Sec. I, Par. VI of the Constitution (*Code* § 2-7806). It is alleged in the petition, as amended, that the amendment did not become a part of the Constitution of 1945 because (a) it offends Art. I, Sec. X, Par. I of the Constitution of the United States (*Code* § 1-134) which declares that no State shall pass any ex post facto law; (b) it offends Art. XIII, Sec. I, Par. I of Georgia's Constitution of 1945 (*Code* § 2-8101) which provides that when more than one amendment to the Constitution is submitted to the voters for ratification or rejection, they shall be so submitted as to enable the electors to vote on each amendment separately; and (c) the language which the proposed amendment specified for its submission to the electors is insufficient to fully apprise them of the content and meaning of

the proposed amendment and of its retroactive provision. We will dispose of these questions in the order of their statement.

(a) The provision contained in Section 1 (e) of the amendment which stated that the authority conferred on the General Assembly by this amendment shall be retroactive to January 1, 1952, and that any Act passed after January 1, 1952, germane to the subject matter of the amendment shall be conclusively presumed to have been passed under the authority of the amendment does not offend that provision of the Federal Constitution which inhibits passage by a State of an ex post facto law. This provision operates only to ratify and confirm any Act germane thereto which the General Assembly might enact before ratification of the proposed amendment or which the General Assembly might pass in anticipation of its ratification by the people. The effective date of the Act which the legislature passed pursuant to the terms of the amendment was January 1, 1953, and then only if the amendment was legally ratified by the people in the general election of 1952. It is the general rule in this country that a legislature has power to enact a statute not authorized by the existing constitution of that State when the statute is passed in anticipation of an amendment to its constitution authorizing it or which provides that it shall take effect upon the adoption of an amendment to its constitution specifically authorizing and validating such statute. Druggan v. Anderson, 269 U. S. 36 (46 SC 14, 70 LE 151); Hammond v. Clark, 136 Ga. 313, 334 (12) (71 SE 479, 38 LRA (NS) 77); and the rulings of this court in Jones v. McCaskill, 112 Ga. 453, 456 (37 SE 724); Wilkins v. Mayor &c. of Savannah, 152 Ga. 638, 643 (111 SE 42); Grayson-Robinson Stores, Inc. v. Oneida, Ltd., 209 Ga. 613 (75 SE2d 161); Commissioners &c. of Fulton County v. Davis, 213 Ga. 792, 794 (102 SE2d 180) do not, as the plaintiff contends, require a different holding in this case since none of those cases deals with an Act which an amendment to our Constitution specifically authorized and validated.

(b) The proposed amendment deals with only one general subject matter, namely, the creation, jurisdiction and powers of joint city-county boards of tax assessors in certain counties of this State and there is clearly no merit in the contention that its provisions were so unrelated to each other that they should have been separately submitted to the electors for ratification or rejection. In this connection, see Hammond v. Clark, 136 Ga. 313, supra, division (9).

(c) When this amendment was submitted for ratification or rejection in 1952, an Act which the legislature had passed in 1939 (Ga. L. 1939, p. 305) was of force and effect and Section 2 of that Act provides: "When any such amendment to the Constitution is proposed, it shall be the duty of the Governor, in preparing the form of ballot for the next general election, to submit the same to the voters for ratification or rejection. The submission shall be in substantially the following form: 'For ratification of the amendment to Article_____, Section _____, Paragraph_____ of the Constitution of Georgia (inserting the nature of the proposed amendment). Against ratification of the amendment to Article_____, Section_____, Paragraph_____, of the Constitution of Georgia (inserting the nature of the proposed amendment).' In so preparing the form of the ballot, the Governor shall use such language as will enable the voters to intelligently pass upon any such proposed amendment and intelligently register their votes concerning the same." There is no allegation in the amended petition that the ballot which the Governor supplied for the submission of this amendment to the electors for ratification or rejection was not sufficient to fully apprise them of its provisions; and in the absence of such an allegation, it will be presumed that the Governor properly performed his official duty with respect thereto. *Fine v. Dade County*, 198 Ga. 655, 663 (32 SE2d 246). Compare *Seago v. Richmond County*, 218 Ga. 151 (126 SE2d 657). Hence, there is no merit in the contention that the amendment did not become a part of the Constitution for want of proper submission.

3. The petition, as amended, alleges that the Act which the General Assembly passed in 1952 (Ga. L. 1952, p. 2825), as amended, is unconstitutional and void because it offends the following provisions of Georgia's Constitution of 1945: Art. XI, Sec. I, Par. VI (*Code* § 2-7806) which provides for uniform county government; Art. I, Sec. IV, Par. I (*Code* § 2-401) which provides that laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law; Art. I, Sec. I, Par. II (*Code* § 2-102) which provides that protection to person and property is the paramount duty of government, and shall be impartial and complete; Art. I, Sec. I, Par. III (*Code* § 2-103), which declares that no person shall be deprived of life, liberty, or

property except by due process of law; and Art. VII, Sec. V, Par. I (*Code* § 2-5801) which declares that the General Assembly shall not authorize any county, municipal corporation or other political subdivision of this State through taxation, contribution or otherwise to appropriate money for, or loan its credit to any corporation, company, association, institution or individual except for purely charitable purposes. None of these attacks on the validity of the 1952 Act, as amended, is meritorious. In *Roberts v. Suttles*, 212 Ga. 138 (91 SE2d 32), this court unanimously held that the Act here under attack was not invalid because enacted prior to ratification of the amendment to the Constitution which authorized its passage by the General Assembly. In that case it was said (p. 141): "The only power this court has is to examine the Constitution as amended and determine whether or not the Act of the General Assembly is authorized under the terms of the Constitution as amended. This we have done, and we find that every provision of the Act of the General Assembly under attack is expressly authorized by the amendment to the Constitution above referred to. A mere reading of the constitutional amendment, it seems to us, discloses this to be true, and nothing we can say or add to the terms of the constitutional amendment would in any way clarify the unambiguous language there used."

4. The petition as amended alleges that the resolution which the General Assembly adopted in 1952 proposing an amendment to Art. XI, Sec. I, Par. VI of the Constitution of 1945 (Ga. L. 1952, p. 591; *Code* § 2-7806), even if validly submitted to and ratified by the people, and the Act which the General Assembly passed pursuant thereto, together with its amendment, which provide for "taxing officers, tribunals, powers, jurisdiction and remedies" in a manner substantially different from that applicable in other counties of the State under the provisions of §§ 92-6907 to 92-7007 of the Code of 1933, offend the Fourteenth Amendment to the Constitution of the United States (*Code* § 1-815) since they deprive the petitioner of its property without due process of law and deny to it equal protection of the law. This contention is not meritorious. The 1952 amendment to the Constitution and the Act which the legislature passed pursuant thereto, as amended, expressly provide for different tax officials in those counties of this State to which they apply, and the jurisdiction, powers and duties

conferred on them are substantially the same as those given to county boards of tax assessors by the referred to sections of the Tax Equalization Act of 1913 (Ga. L. 1913, p. 123) and this court held, in *Vestel v. Edwards,* 143 Ga. 368 (1) (85 SE 187) and in *McGregor v. Hogan,* 153 Ga. 473 (112 SE 471), that those sections of the Tax Equalization Act did not offend the provisions of the Constitution of the United States here mentioned.

5. In this State there can be several separate and distinct estates in the same parcel or parcels of land, and *Code* § 92-104 requires the owner of any estate in land to return it for taxes and pay taxes on it as on other property. A leasehold is an estate in land less than the fee; it is severed from the fee and classified for tax purposes as realty. *Code* § 92-104. *State of Ga. v. Davison,* 198 Ga. 27 (31 SE2d 225) ; and *Delta Air Lines, Inc. v. Coleman,* 219 Ga. 12 (131 SE2d 768). The amended petition affirmatively shows that the petitioner on January 1, 1958, conveyed to Southern Railway Company a leasehold estate in the lands here involved for railroad uses for a period of 25 years. After that conveyance was made, Southern Railway Company was legally required to return annually its leasehold estate in such lands to Georgia's Revenue Commissioner and to pay taxes assessed against it by the Commissioner. On the other hand, the law required the plaintiff to return annually for ad valorem taxation the estate which the petition plainly shows it owned in those lands to the proper taxing officials of the City of Atlanta and Fulton County and the allegations of the petition affirmatively show that it failed to do so for the years here involved. And since the Southern Railway Company was authorized and could lawfully return only its leasehold estate in such lands to the State Revenue Commissioner, a return by it of the entire estate in such lands to the Commissioner and its voluntary payment of the taxes assessed by him against such property for the years involved would not relieve the plaintiff from its legal obligation to return annually the estate it owned in such lands to the proper taxing officials of the City of Atlanta and Fulton County and to pay the taxes lawfully assessed against it by such joint city-county board of tax assessors for the years involved and such payment by it of the taxes assessed against it by the board for the tax years involved would not constitute, as plaintiff contends, double taxation of such prop-

erty. See, in this connection, *Macon Coca-Cola Bottling Co. v. Evans*, 214 Ga. 1 (102 SE2d 547).

6. Section 10 of the Act of 1952 which created a Joint City-county Board of Tax Assessors for the City of Atlanta and Fulton County expressly authorizes such board to assess for ad valorem taxation any unreturned property in that city or county, other than that which the owner is required to return to the State Revenue Commissioner. This section, which is clearly authorized by the 1952 amendment to the Constitution of 1945, provides that the joint city-county board in making assessments of unreturned property shall apply the general law prescribing the procedure to be followed by county boards of tax assessors in assessing unreturned property for taxation. An amendment to the original Act which was passed in 1956 (Ga. L. 1956, p. 3361) prescribes materially different procedure to be followed and applied by the joint city-county board of tax assessors from that contained in the original Act, but Section 1 of an Act which was passed in 1958 (Ga. L. 1958, p. 3390) provides that the joint city-county board of tax assessors shall have all of the power and authority provided by Title 92-69 of the Code of 1933, as amended, in ascertaining what property is subject to taxation and fixing the value thereof and Section 2 of the same Act repeals the Act of 1956; and there is no merit in the contention that the Act of 1958 did not for any reason alleged repeal the Act of 1956. The allegations of the petition as amended are wholly insufficient to show that the joint city-county board of tax assessors in making the complained of assessments against the petitioner's property did not follow and apply the procedure prescribed by the original Act of 1952 as amended by the Act of 1958.

7. Paragraph 13 of the original petition alleges that on June 16, 1960, at petitioner's request and for the purpose of permitting a discussion of the propriety of the assessments which the joint city-county board of tax assessors had made respecting valuation of petitioner's property for the tax years involved, the board withdrew the assessment notices which it had given petitioner on May 30, 1960. Paragraph 14 alleges that on June 26 and June 29, 1960, the defendants Matthews and Camp in their respective official capacities and pursuant to the tax assessments previously made by the board, issued fi. fas. against the petitioner for the taxes allegedly due it

for the three years involved. And paragraph 23 (d) alleges that any attempt which the defendants Matthews and Camp may make to collect the taxes allegedly due by petitioner for the three years involved through enforcement of the fi. fas. they issued will be unauthorized and should be enjoined because the joint city-county board of tax assessors for said city and county did on June 16, 1960 "withdraw the assessments" on which they were based and since that date the board has not assessed or re-assessed petitioner's property for taxes. Strictly construed for purposes of the demurrer, these allegations do not show a withdrawal or cancellation of the official assessments made by the board; they only show that the "assessment notices" given by the board were withdrawn on request from the petitioner for a discussion of the propriety of the assessments.

8. For reasons stated in the preceding divisions of this opinion, the petition, as amended, failed to state a cause of action for the relief sought and the court erred in overruling the general demurrers thereto.

*Judgment reversed. All the Justices concur.*

ARGUED FEBRUARY 9, 1965—DECIDED APRIL 12, 1965—REHEARING DENIED APRIL 28, 1965.

*Charles M. Lokey, Harold Sheats, J. C. Murphy, Henry L. Bowden,* for plaintiffs in error.

*Greene, Neely, Buckley & DeRieux, Edgar A. Neely, Jr., James A. Eichelberger,* contra.