**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**BARNES, P. J., and RICKMAN, P.J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 29, 2021**

# In the Court of Appeals of Georgia

A21A0259. TIMOTHY FRANZEN, INTERVENOR et al. v. CITY OF ATLANTA.

A21A0267. TIMOTHY FRANZEN, INTERVENOR et al. v. CITY OF ATLANTA.

RICKMAN, Presiding Judge.

This case involves two of three related bond validation proceedings, "all of which concern the redevelopment of an area of downtown Atlanta commonly referred to as "The Gulch."" *Franzen v. Downtown Dev. Auth. of Atlanta*, 309 Ga. 411, 411 (845 SE2d 539) (2020) ("*Franzen I")*.[1] The Appellants opposed the bond validation

---

[1] The bond validation proceedings at issue in this case involve the Westside Tax Allocation District, where The Gulch is located. The third related bond validation proceeding, which is not considered as part of this opinion, involved the Enterprise Zone Employment Act. In *Franzen I*, the Georgia Supreme Court determined that "[t]he record supports the trial court's decision to defer to the City's view that redevelopment of The Gulch serves a beneficial public purpose and upheld the trial court's determination that the issuance of those Bonds was "sound, feasible, and

below primarily by arguing that the Atlanta Board of Education and the Fulton County Board of Commissioners did not have the authority to commit educational tax dollars derived from certain tax allocation districts to the use of the proposed Gulch developer for the Gulch redevelopment. Because we find that these arguments have no merit, we affirm the trial court's validation of the related bonds.

"Whether a proposal to issue bonds is sound, feasible, and reasonable is a question for the trial court, and its findings about soundness, feasibility, and reasonableness must be sustained on appeal if there is any evidence to support them." (Citation and punctuation omitted.) *Savage v. State*, 297 Ga. 627, 631-32 (3) (774 SE2d 624) (2015).

"The relevant facts show that, in 1998, the City of Atlanta ("City"), through its City Council, adopted a Westside Redevelopment Plan that expressly declared the City's goal of redeveloping The Gulch, which had been blighted and underdeveloped for some time. *Franzen*, 309 Ga. at 411 (1). According to the plan,

> The Railroad Gulch – The ravine created in Atlanta by the railroads has long been a nuisance to the citizens of Atlanta as it has visually, socially, and physically divided the area since the early 1900's. To overcome these conditions[,] the infusion of capital and the assistance

reasonable." Id. at 431-432 (4).

2

of government is needed to redevelop this 150 acre area.... With the impending development of the new Atlanta Arena, [Tax Allocation District] funds could be used to help fill development gaps for tourism uses, ... office and retail uses, and other redevelopment needs and uses that might exist. Such developments offer Atlanta the best opportunity to redevelop the "[G]ulch" since the founding of the city over 150 years ago.

Id. at 411–12 (1).

The Redevelopment Powers Law encourages redevelopment "of economically and socially depressed areas" because "these areas contribute to or cause unemployment, limit the tax resources of counties and municipalities, and create a greater demand for government services and, in general, have a deleterious effect upon the public health, safety, morals, and welfare." OCGA §§ 36-44-1; 36-44-2. "To encourage such redevelopment, it is essential that the counties and municipalities of this state have additional powers to form a more effective partnership with private enterprise to overcome economic limitations that have previously impeded or prohibited redevelopment of such areas." OCGA § 36-44-2.

A political subdivision,

may exercise any powers necessary or convenient to carry out the purposes of the [Redevelopment Powers Law], including but not limited

3

to, the power to: . . . [c]ause redevelopment plans to be prepared, to approve by resolution the plans, and to implement the provisions and effectuate the purposes of the plans; [c]reate within redevelopment areas tax allocation districts and define the boundaries thereof or designate an entire redevelopment area as a tax allocation district; . . . [i]ssue tax allocation bonds[.]

OCGA § 36-44-5 (a) (2), (3), and (5).

A tax allocation district is defined as "a contiguous geographic area within a redevelopment area which is defined and created by resolution of the local legislative body of a political subdivision . . . for the purpose of issuing tax allocation bonds to finance, wholly or partly, redevelopment costs within the area." OCGA § 36-44-3 (13). Tax allocation bonds are "one or more series of bonds . . . issued by a political subdivision to finance, wholly or partly, redevelopment costs within a tax allocation district and which are issued on the basis of pledging for the payment or security for payment of such bonds positive tax allocation incrementsrederived from the tax allocation district." OCGA § 36-44-3 (12). Tax allocation increments are derived

4

from an increase in ad valorem property tax[2] revenues resulting from redevelopment. See OCGA § 36-44-3 (14).

In 1998, the City created the Westside Tax Allocation District ("TAD") when it adopted the Westside Development Plan. Thereafter, the Atlanta Board of Education, passed a resolution consenting to the inclusion of its ad valorem real property taxes in the computation of the tax allocation increments for the Westside TAD. Likewise, the Fulton County Board of Commissioners passed a similar resolution, consenting to the inclusion of its ad valorem real property taxes in the computation of the tax allocation increments for the Westside TAD through 2023.

Twenty years later, in 2008, the City Council passed a resolution amending the termination date of the Westside TAD from December 31, 2023 to December 31, 2038. Fulton County then amended its 1998 resolution and extending its consent through 2038, with certain conditions.

After the bond validation proceedings were initiated in both of these cases, the Atlanta Board of Education adopted the 2018 resolution which stated that "[n]o

_____

[2] Ad valorem property taxes are defined as "all ad valorem property taxes levied by each political subdivision and each county and independent board of education consenting to the inclusion of that board of education's property taxes as being applicable to a tax allocation district" subject to a few defined exceptions. OCGA § 36-44-3 (1).

5

further use of the ad valorem tax increments authorized by the School Board in the 1998 Resolution . . . shall be permitted without the School Board's prior written consent, except to pay the debt service on the currently outstanding Bonds secured thereby."

One month later, the Atlanta Board of Education passed another Resolution ("the 2019 Resolution"), ratifying its continued consent to use of its tax increments from the Westside TAD:

> Effective upon the Atlanta City Council's approval of the Agreement,[3] the School Board hereby ratifies its continued consent to the inclusion of educational *ad valorem* property tax increment derived from the Westside TAD for the payment of redevelopment costs in the Westside TAD through December 31, 2038 and as security for the payment of the Prior Westside TAD Bonds, as such bonds may be refunded, restructured and or restated; provided that the maturity of such bonds shall not be extended beyond December 31, 2037.

Additionally, the 2019 Resolution provided that the School Board consented "to the inclusion of its educational *ad valorem* property tax increment generated solely within the Gulch Area of the Westside TAD for the payment of Redevelopment Costs in the Gulch Area and tax allocation bonds issued for the Gulch Project but only

---

[3] The City Council approved the Agreement.

6

through December 31, 2038[.]" Finally, the 2019 Resolution clarified that it "shall supersede any conflicting provision in the [2018 Resolution] related to City tax allocation districts."

On the first day of the bond validation hearings, four citizens of the City (the "Intervenors"), the appellants in these cases, moved to intervene and filed an answer and objections to the bond validations.[4] The trial court granted the motions to intervene and the bond validation hearings took place over several days.

In A21A0259, the trial court issued orders both denying the Intervenors objections and validating the issuance of the Westside TAD Gulch Area Bonds in an amount not to exceed 40 million dollars. In A21A0267, the trial court issued orders both denying the Intervenors objections and validating "the issuance by [the City] of a series of restated bonds originally issued as part of redevelopment work in the City's Westside Tax Allocation District."[5] The Intervenors appeal from these four

_____

[4] The Intervenors are Timothy Franzen, Vincent D. Fort, James S. Martin, and Julian M. Bene.

[5] As explained in the trial court's validation order, "the proceedings concern the City's (1) Tax Allocation Variable Rate Bonds (Westside Project), Series 2001-R, in the aggregate principal amount of $3,535,000 ("the 2001 Restated Bonds") in exchange for the City's outstanding Tax Allocation Variable Rate Bonds (Westside Project), Series 2001, in the original aggregate principal amount of $14,995,000 ("the Original Series 2001 Bonds"); (2) Tax Allocation Variable Rate Bonds (Westside

7

orders.[6] Many of the enumerated errors in A21A0259 and A210267 involve the same issues so we will consider both cases jointly.

1. The Intervenors contend that the trial court erred by holding that the Atlanta School Board could not limit its participation in the Westside TAD pursuant to the 2019 resolution.

---

Project), Series 2005A-R in the aggregate principal amount of $32,680,000 (the "2005A Restated Bonds") in exchange for the City's outstanding Tax Allocation Variable Rate Bonds (Westside Project), Series 2005A in the original aggregate principal amount of $72,350,000 (the "Original Series 2005A Bonds"), and its Tax Allocation Variable Rate Bonds (Westside Project), Series 2005B-R in the aggregate principal amount of $4,905,000 (the "2005B Restated Bonds") in exchange for the City's outstanding Tax Allocation Variable Rate Bonds (Westside Project), Series 2005B in the original aggregate principal amount of $10,215,000 (the "Original Series 2005B Bonds" and together with the Original Series 2005A Bonds, the "Original Series 2005 Bonds"); and (3) Tax Allocation Variable Rate Bonds (Westside Project), Series 2008-R in the aggregate principal amount of $48,290,000 (the "Restated 2008 Bonds" and collective with the 2001 Restated Bonds, the 2005A Restated Bonds and the 2005B Restated Bonds, the "Restated Bonds") in exchange for the City's outstanding Tax Allocation Variable Rate Bonds (Westside Project), Series 2008 in the original aggregate principal amount of $63,760,000 (the "Original Series 2008 Bonds" and collectively, with the Original Series 2001 Bonds and Original Series 2005 Bonds, "the Original Bank Bonds"), all as more particularly described in the pleadings of this case."

[6] The Intervenors originally filed their notice of appeal in both cases in the Supreme Court of Georgia. After reviewing the Intervenors' briefs, however, the Supreme Court determined that its constitutional question jurisdiction was not invoked, and it transferred both cases to this Court.

8

This holding that the Intervenors challenge was an alternate holding. The trial court held that, in the 2019 resolution, the Atlanta School Board consented to the inclusion of educational ad valorem property tax dollars as a basis for computing the tax allocation increment for the Westside TAD. Furthermore, the trial court held that even without the 2019 resolution, "there was never a time limit on [the Atlanta School Board's] commitment to pledging its share of *ad valorem* tax dollars in the Westside TAD, dating back to its original consent in 1998." Alternatively, the trial court held that once the City passed the Gulch Project Resolution in 2018, the Atlanta School Board could not revoke its consent.

The 2019 resolution expressly stated that the Atlanta School Board consented "to the inclusion of its educational *ad valorem* property tax increment generated solely within the Gulch Area of the Westside TAD for the payment of Redevelopment Costs in the Gulch Area and tax allocation bonds issued for the Gulch Project[.]" And regardless of the validity of the 2018 resolution, the trial court properly held that the Atlanta School Board expressly reinstated its consent to the inclusion of any educational ad valorem property tax dollars as a basis for computing the tax allocation increment for the Westside TAD in the 2019 resolution.

2. The Intervenors contend that the trial court erred by failing to grant their motion for judgment on the pleadings.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." OCGA § 9-11-12 (c). The bond validation hearings began on December 10, 2018. See *Franzen I*, 309 Ga. at 419-420 (3) (b). The Intervenors did not file their motion for judgment on the pleadings until January 11, 2019, over a month after the trial began. The trial court held that the Intervenors motion was untimely, citing OCGA § 9-11-12 (c).

The Intervenors fail to even address the basis for the trial court's ruling. We conclude that the trial court's denial of the motion as untimely was not an abuse of its broad discretion. See generally *Franzen I*, 309 Ga. at 419-421 (3) (b).

3. The Intervenors contend that the trial court erred by holding that Fulton County consented to the proposed financing of the Gulch project.

OCGA § 36-44-14 (b) provides that,

All tax allocation bonds, notes, and other obligations shall be authorized by resolution of the local legislative body, adopted by a majority vote of the members thereof at a regular or special meeting and without the necessity of a referendum or any electoral approval. The resolution shall state the name of the tax allocation district and the aggregate principal amount of the tax allocation bonds authorized.

10

In 1998, Fulton County consented to the inclusion of its ad valorem taxes on real property in the computation of tax allocation increments for the Westside TAD through 2023. In 2008, Fulton County passed a resolution extending its consent through 2038, but requiring a new resolution before allowing Fulton County tax increments to be used for "new projects receiving TAD financing after December 31, 2018."

Intervenors argue that because the Westside TAD bonds for the Gulch contemplate using the ad valorem taxes after December 31, 2018, there must be a separate Fulton County resolution authorizing each use because the Gulch is a "new" project. The trial court held that "as read by the Intervenors, the [2008 resolution] would effectively swallow the [1998 resolution] and mandate a project-specific resolution for every Westside TAD development projecct proposed after [December 17, 2008]" and that if that had been the intent, Fulton County would have simply repealed the 1998 resolution. Thus, the trial court found that "new" in the 2008 resolution referred to

> when the TAD-dependent project is proposed, not when the financing
> begins to flow. . . . "That the Westside TAD Gulch Area Bonds –
> redevelopment bonds that were proposed and approved by the city
> before [December 31, 2008] – will rely in part on the County's *ad*

11

*valorem* taxes is not problematic and not inconsistent with the ongoing consent the County granted in its [2008 resolution]."

"In considering these various enactments, we must apply the principal rules of statutory construction." *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). "It is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." (Citation and punctuation omitted.) Id. "These principles apply in the interpretation of city or county ordinances as well as statutes." Id.

We agree with the trial court that construing both the 1998 and 2008 resolutions together, the logical interpretation that harmonizes both resolutionas is that any project approved on or before December 31, 2018, such as the Gulch project, is able to utilize the County's share of ad valoreum taxes without further resolution from the County. For new projects proposed after December 31, 2018, no County ad valorem taxes could be used absent a resolution from the County expressing its consent. See generally *City of Buchanan*, 222 Ga App. at 718 (1) (a); *Hogan v. DeKalb County*, 196 Ga. App. 728, 729 (397 SE2d 16) (1990).

4. In two enumerated errors, the Intervenors contend that the trial court erred by holding that the Atlanta School Board has consented to participate in the Westside TAD through December 31, 2038 and by admitting the 2019 resolution into evidence.

"All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules. ... Evidence which is not relevant shall not be admissible." OCGA § 24-4-402. "[T]he term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "[E]vidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence." (Citation and punctuation omitted.) *City of Atlanta v. Bennett*, 322 Ga. App. 726, 728 (1) (746 SE2d 198) (2013). A trial court's ruling that evidence is relevant will not be reversed absent abuse of discretion. (Citation and punctuation omitted.) *Heard v. Payne*, 350 Ga. App. 283, 286 (1) (828 SE2d 657) (2019).

As discussed in Division 1, the 2019 resolution expressly stated that the Atlanta School Board consented "to the inclusion of its educational *ad valorem* property tax increment generated solely within the Gulch Area of the Westside TAD

13

for the payment of Redevelopment Costs in the Gulch Area and tax allocation bonds issued for the Gulch Project[.]" Because the 2019 resolution clarified that it "shall supersede any conflicting provision in the [2018 Resolution] related to City tax allocation districts," it was relevant to the trial court's ultimate conclusion regarding the propriety of the bonds and whether the School Board properly consented to the inclusion of its property tax increment in the TAD Bonds. Accordingly, the trial court did not abuse its discretion in failing to exclude the evidence. See generally *Heard*, 350 Ga. App at 286 (1).

5. The Intervenors contend that the trial court erred by validating the TAD development agreement. Specifically, the Intervenors argue that the TAD development agreement violates Art. IX, Sec. V, Par 1 (a) of the 1983 Georgia Constitution (the "debt limitation clause"), Art. IX, Sec. II, Par. VII of the 1983 Georgia Constitution (the "appropriation clause"); and Art. III, Sec. VI, Par. VI of the 1983 Georgia Constitution (the "gratuities clause").

In our Supreme Court's order transferring this case to our Court the Supreme Court stated that "the trial court specifically declined to consider the constitutional arguments raised therein, such that its order validating the bonds cannot be considered an implicit ruling on those untimely arguments." *Franzen v. City of*

14

*Atlanta* (Case No. S20A1013).[7] Because the trial court did not rule on the constitutional questions, the constitutional issues are not properly before this Court. See *City of Decatur v. DeKalb County*, 284 Ga. 434, 438 (2) (668 SE2d 247) (2008).

6. The Intervenors contend that the trial court erred in the bond validation order by concluding that the financing structure of the Gulch tax allocation bonds was lawful.

The Intervenors advanced this argument in the second amendment to their answer and the trial court failed to address it because it was untimely. Because the trial court found the Intervenors' objection to be untimely and failed to address the argument, there is nothing for this Court to review. See *Franzen I*, 309 Ga. at 420 (3) (b); *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (537 SE2d 369) (2002) (when there has been no specific ruling by the trial court on an issue on appeal, there is no ruling to review for legal error).

---

[7] The Intervenors contend that the trial court erred by holding that certain of their objections were untimely. This issue has already been dealt with by our Supreme Court who found that it was not an abuse of discretion for the trial court to determine that Intervenors' amendments, which included additional objections, were untimely. See *Franzen I*, 309 Ga. at 420 (b).

7. The Intervenors contend that the trial court erred by holding that a new or amended local law is not required before the City can exercise the authority to use school tax funds in a TAD to fun redevelopment costs.

The Georgia Supreme Court has recognized that since 1986, the City has been authorized to create TADs to fund redevelopment projects. See *Sherman v. Atlanta Indep. Sch. Sys.*, 293 Ga. 268, 269 (1) (744 SE2d 26) (2013).[8] The trial court properly held that nothing in the Redevelopment Powers law repealed the City's existing authority to create TADs. OCGA § 36-44-22 only requires that "[r]edevelopment powers under this chapter may not be exercised by any political subdivision unless so authorized by a local law relating thereto." Because the City had already passed a local law authorizing the City's redevelopment powers, this claim has no merit.

8. The Intervenors contend that the trial court erred by holding that the City's adoption of the Westside Redevelopment Plan and creation of the Westside TAD was lawful.

---

[8] "In 1986, the General Assembly enacted a local law amending the charter of the City of Atlanta to authorize the City to exercise redevelopment powers, see Ga. L. 1986, p. 4834, §§ 1–3; that local law was approved in a City referendum." *Sherman*, 293 Ga. at 269 (1).

"A redevelopment plan may be proposed by the redevelopment agency of a political subdivision, but such plan may not be implemented until it is approved by the adoption of a resolution of the local legislative body of the political subdivision as provided in this chapter." OCGA § 36-44-7 (a). The Georgia Supreme Court stated that "in 1998, the City of Atlanta ("City"), through its City Council, adopted a Westside Redevelopment Plan that expressly declared the City's goal of redeveloping The Gulch, which had been blighted and underdeveloped for some time." *Franzen I*, 309 Ga. at 411 (1). The Intervenors fail to make any successful argument as to why the redevelopment plan was not properly adopted and this claim has no merit.

9. The Intervenors contend that the trial court erred by holding that the redevelopment plan complied with OCGA § 36-44-3 (9).

OCGA § 36-44-3 was amended in 2009 to add the requirement that "[i]f the [redevelopment] plan proposes to include in the tax allocation increment ad valorem taxes levied by a board of education, the plan shall contain a school system impact analysis addressing the financial and operational impact on the school system of the proposed redevelopment." OCGA § 36-44-3 (9). The Westside Redevelopment Plan, however, was adopted in 1998 and amended in in 2008, accordingly this claim has no merit. See OCGA § 36-44-9 (g) ("Any consent by a local board of education to the

17

inclusion of educational ad valorem property taxes as a basis for computing tax allocation increments and any authorization to use such funds for such purposes that was approved before January 1, 2009, and not rescinded or repealed prior to April 22, 2009, is ratified and confirmed.").

10. The Intervenors contend that the trial court erred by holding that the original series 2008 bonds that are the subject of A21A0267 were secured by education property tax increment dollars.

As the trial court found, the evidence shows that since 2011, the original series 2008 bonds have been secured by the education tax increment, accordingly this claim is meritless.

11. The Intervenors contend that the trial court erred because the validation order and the order on objections fail to comply with OCGA § 9-11-52 (a)[9].

---

[9] That statute provides that,
> In ruling on interlocutory injunctions and in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law. If an opinion or memorandum of decision is filed, it will be sufficient if the findings and conclusions appear therein. Findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the

The Intervenors fail to explain how exactly the orders fail to satisfy the requirements of OCGA § 9-11-52 (a). They made the same argument in *Franzen I* and the Supreme Court rejected the argument, holding that

> during the three days of hearings, extensive evidence was, in fact, presented regarding the mechanics of the bond financing structure, which is included in the record and discussed in the trial court's lengthy orders. Therefore, contrary to the Intervenors' contentions, there is a clear statement of the trial court's reasoning, and there is a sufficient basis on which this Court can assess that conclusion.

*Franzen I*, 309 Ga. at 422 (3) (c). The same reasoning applies to the orders in this case and "[t]herefore, there is no need to remand this case for the trial court to make additional findings." Id.

> In conclusion,

> [t]he record supports the trial court's decision to defer to the City's view that redevelopment of The Gulch serves a beneficial public purpose. While not all Atlantans, including the Intervenors in this case, share the City's vision for The Gulch, that does not mean that the project is illegal. As the trial court pointed out, the job of the courts is not to question the advisability or estimate the popularity of the City's decisions regarding the development of The Gulch. With regard to the

---

witnesses.

19

validation of the Bonds, the job of this Court is simply to determine whether there was any evidence supporting the trial court's determination that the issuance of the Bonds was sound, feasible, and reasonable. In this case, there was.

*Franzen,* 309 Ga. 411 at 431–32 (4).

*Judgment affirmed. McFadden, C. J., and Barnes, P. J, concur*.